**FIDELITY & DEPOSIT CO. OF MARYLAND v. STATE OF MONTANA et al.**

No. 8428.

Circuit Court of Appeals, Ninth Circuit.

Oct. 26, 1937.

694

T. B. Weir, W. L. Clift, and Harry P. Bennett, all of Helena, Mont., for appellant.

Harrison J. Freebourn, Atty. Gen. of Montana, Enor K. Matson, Asst. Atty. Gen., and R. G. Wiggenhorn, of Billings, Mont., for appellees.

Before WILBUR, STEPHENS, and HEALY, Circuit Judges.

.HEALY, Circuit Judge.

This is a suit on a public warehouseman's bond. From a judgment against it in the penal sum of the bond the defendant appealed.

The facts not in dispute may be summarized as follows:

From August, 1929, to July, 1931, Chatterton & Son, a Michigan corporation, conducted a warehouse at Billings, Mont., for the storage of beans. The concern operated extensively throughout the country, having its home office in Michigan. The handling and warehousing of beans was the principal business of the corporation. One R. J. Healow was its local manager at Billings.

In December, 1929, Chatterton & Son made application to appellant for a public warehouseman's bond. The application was on a form containing numerous blanks designed to elicit information concerning the assets of the applicant, the nature of its business, and the character of the bond required. None of the blanks was filled out except those intended to supply the name and location of the applicant, the amount of the bond, the name of the party to whom it was to be given, and the nature of the guarantee. As to the last, the application merely stated that the bond required was a public warehouseman's bond to the State of Montana, the nature of the business not being disclosed.

The application was made through appellant's agent at Lansing, Mich. In writing the bond the appellant used a printed form supplied by the State of Montana. The bond is signed both by Chatterton & Son and by appellant. It provides that both are "bound unto the State of Montana, for the benefit of all parties concerned, in the penal sum of $10,000.00." The further relevant provisions are as follows:

"The condition of this obligation is such that whereas the above bounden Chatterton & Son being the lessee of a public local warehouse located in Billings in the State of Montana, and owned, controlled or operated by the said Chatterton & Son has applied to the Division of Grain Standards and Marketing of the Department of Agriculture, Labor and Industry of the State of Montana for a license or licenses to open, conduct and carry on the business of public warehouseman in the State of Montana, for the period beginning January 1, 1930, and ending July 1, 1930, in accordance with the laws of the State of Montana * * *

"Now, therefore, if the said Chatterton & Son shall indemnify the owners of grain stored in said warehouse against loss and faithfully perform all the duties of and as a public warehouseman and fully comply in every respect with all the laws of the State of Montana and the regulations of the Department of Agriculture heretofore enacted or to be enacted hereafter in relation to the business of public warehousemen, then this obligation to be null and void, otherwise to remain in full force and effect."

This bond was sent by appellant to the manager of Chatterton & Son at Billings, who did not deliver it to the Department of Agriculture of Montana until May 12, 1931.

A certificate continuing the original bond in force from July 1, 1930, to July 1, 1931, was later executed by appellant and mailed by it to the "Secretary of Agriculture" at Billings. This certificate was delivered to manager Healow but was not transmitted to the department until July 21, 1931. The appellant received premiums for the bond and for its renewal. .

The manager at Billings let it be known to the growers generally in that locality that a bond had been furnished for the protection of those who stored their beans with this concern, and the dissemination of that information contributed to the volume of its warehouse business. During the fall and winter of 1930 a large quantity of beans in sacks was stored in the warehouse by numerous growers. A warehouse receipt was issued by Chatterton & Son to each individual depositor calling for the delivery to the holder of the receipt of the identical product stored. The identity of these beans was not preserved. The trial court found on sufficient evidence that the beans were treated by Chatterton & Son as their own, and that the bulk was sold and disposed of prior to July, 1931, all without the knowledge of the owners.

Upon discovery of the defalcation, unavailing efforts were made by the receipt holders or their representatives to obtain their property. The ultimate loss to the owners of the stored beans, after allowing all proper credits, was substantially in excess of the amount of the bond furnished by appellant. The State of Montana promptly made demand upon appellant for the discharge of its obligation under the bond.

At the time of the execution of this instrument there were statutes in Montana governing the warehousing of grain and providing for the licensing, bonding, and supervision of warehousemen receiving grain for storage. Sections 3573–3592, Revised Codes 1921, as amended. There were statutes requiring the operator of any public warehouse holding himself out as receiving agricultural seeds for storage to pay a license fee and to furnish a bond. Section 3592; sections 3592.1 to 3592.8, Revised Codes 1921, as enacted by Laws 1927, c. 50, §§ 1–8. There was no state act governing the business of warehousing beans.

This suit was commenced in May, 1932. The original complaint, while declaring on the bond as written, alleged that at the time of its execution the defendant was fully informed as to the nature of the warehouse and business being conducted by Chatterton & Son at Billings, namely, the exclusive handling and storage of beans, and that it executed the bond in consideration thereof. The cause was removed to the federal court, and defendant then answered. Subsequently in December, 1934, plaintiff asked leave to file an amended complaint and that the cause be transferred to the equity side of the court. Over objection of the defendant leave was granted.

The amended complaint elaborates upon the allegations of the original complaint in the respect above referred to, and alleges that it was intended both by Chatter-

ton & Son and by the defendant that by the bond obtained the defendant would undertake to indemnify the owners of beans stored in the Billings warehouse against loss; but that through inadvertence the instrument did not truly express the intention of the parties, in that it referred to the owners of grain rather than to the owners of beans. It was prayed that the bond be reformed so as to express the true intent of the parties and that as so reformed it be enforced against the defendant. As amended, the complaint undertakes to take a cause of action on the bond as a common-law obligation.

Thereafter the cause was tried to the court without a jury and judgment for reformation and for the penal sum of the bond, with interest, was entered.

The principal contentions of appellant are, (a) that under the guise of amendment, the appellee improperly undertook in its amended complaint to set up a new and different cause of action; (b) that the action for reformation is barred by the statute of limitations; (c) that the bond in controversy was executed with intent to cover the storage and handling of grain, as distinguished from beans; (d) that the bond contemplated the filing and approval thereof and the licensing and supervision of Chatterton & Son by the state as a public warehouseman, and the fact that the instrument was never filed or approved and that Chatterton & Son was not licensed by the state, bars recovery; (e) that there was no delivery of the bond and that it was therefore ineffective either as a statutory or common-law obligation; and (f) that Chatterton & Son was a necessary party to the action.

■ The original and amended complaints both seek relief on the contract, the latter upon the contract as reformed. The object of each is the same. The court had power to permit the amendment, subject to the ruling that the statute of limitations continues to run against the cause of action set up in the amendment until the amended complaint is filed. Section 274a of the Judicial Code (28 U.S.C.A. § 397) permits the shifting of cases from the law to the equity side of the court and vice versa, and authorizes the amendment of pleadings to conform them to the proper practice. Liberty Oil Co. v. Condon National Bank, 260 U.S. 235, 243, 43 S.Ct. 118, 121, 67 L.Ed. 232. A motion to amend is directed to the sound discretion of the trial court and we find here no abuse of discretion.

■ It is urged that the attempted reformation is barred by the provisions of subdivision 4 of section 9033 of the Revised Codes of Montana. This statute provides a two-year limitation for "an action for relief on the ground of fraud or mistake, the cause of action in such case not to be deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud or mistake."

The suit as filed in the first instance sought recovery on the bond as one intended by the parties to indemnify the owners of beans stored in the Billings warehouse. The reformation asked in the amended complaint is merely auxiliary to the enforcement of the contract as originally pleaded.

In Thielbar Realties, Inc., v. National Union Fire Insurance Co., 91 Mont. 525, 9 P.(2d) 469, reformation was sought of a policy of fire insurance. It was claimed that through mutual mistake there were errors in the drafting of the policy, among others that there was a misdescription of the land on which was located the building intended to be insured. The action had been brought more than two years after the loss and the discovery of the mistake. The Montana Supreme Court concluded that the primary purpose of the suit was the enforcement of the contract, and that reformation was but auxiliary to this purpose. It refused to apply the Montana statute invoked here, limiting the time within which an action may be brought for relief on the ground of fraud or mistake, and held that the applicable limiting statute is that fixing the time in which an action may be brought on contract. The latter limitation is eight years.

We are constrained to follow the interpretation which the Montana court has placed upon the local statute and to hold that the action for reformation is not barred by limitation. Higgins Oil Co. v. Snow (C.C.A.) 113 F. 433.

■ The application was for a public warehouseman's bond. That Chatterton & Son was a public warehouseman within the general meaning of the term is not questioned. A storage and handling charge was regularly exacted from all those using the warehouse facilities and negotiable warehouse receipts were uniformly issued. 67 C.J. 443. Since the precise nature of the

business conducted was not disclosed in the application, the kind of warehouse for which the bond was sought was necessarily subject to further inquiry. The agent of the appellant was shown to have been familiar with the nature of the business conducted by Chatterton & Son and with the fact that its Billings warehouse was used solely for the handling and storage of beans. There is persuasive evidence that the parties intended to execute a bond for the protection of those using the warehouse for that purpose. Indeed, if that was not the purpose of the instrument, it served no purpose at all. Since the bond was written up on a printed form obtained by appellant's agent from the State of Montana, it is easy to understand how the mistake occurred resulting in the failure of the instrument to express the true intent of the parties.

The court properly ordered the reformation of the instrument. Commercial Casualty Insurance Co. v. Lawhead, 62 F. (2d) 928 (C.C.A.4th); National Reserve Ins. Co. of Ill. v. Scudder et al., 71 F.(2d) 884 (C.C.A.9th); Oliver v. Mutual Commercial Marine Ins. Co., Fed.Cas.No. 10,498, 2 Curt. 277; Skelton v. Federal Surety Co., 15 F.(2d) 756 (C.C.A.8th); Medical Society of S. C. v. Gilbreth (D.C.) 208 F. 899; Maher v. Hibernia Ins. Co., 67 N.Y. 283; Esch Bros. v. Home Insurance Co., 78 Iowa 334, 43 N.W. 229, 16 Am.St.Rep. 443; 14 R.C.L. 902; note 28 L.R.A.(N.S.) 811, 831 and cases there cited.

■ The appellant argues that the licensing and supervision by the State of Montana of the warehouse in question were conditions upon which the bond was executed; and that to construe the instrument in such manner as to hold appellant responsible, notwithstanding the warehouse was not licensed nor subject to the supervision of the state, is to enlarge the responsibility of appellant beyond that it intended to assume. The bond is not expressly based upon these conditions, nor is there anything in the application importing such conditions. Moreover, the appellant asserts in its pleading that at the time the bond was issued and renewed there was no authority under the state law for the licensing, regulation, or supervision of bean warehouses by the State of Montana or by its Department of Agriculture and no requirement that such warehousemen furnish bond. This being true (and it is upon that

theory that both parties present the case here) the appellant could not have indulged the assumption under which it now seeks to escape liability. A surety company undertaking to write business in any state is required to take notice of the law of that state. Knowing that there was no authority in the state to license or supervise the operations of bean warehousemen, the appellant nevertheless wrote a bond intended for the protection of those storing their property with that kind of warehousemen.

■ The failure of the Billings manager of Chatterton & Son to file the bond with the state authorities is not a controlling circumstance. The appellant, without apparent condition, made such disposition of the instrument and the certificate of renewal as precluded it from further control over either. I Williston on Contracts, § 211; Restatement of the Law of Contracts, § 102. In a formal certificate under seal, dated December 6, 1930, the appellant acknowledged that it was then surety on this bond. This certificate was by appellant's agent placed in the hands of the Department of Agriculture of the State of Montana. There is no lack of proof that appellant intended to make the bond effective.

■ Chatterton & Son was under legal obligation to those making deposits in its warehouse as bailee of their goods. While there was no duty, statutory or otherwise, resting upon this concern to procure a bond for the further protection of its customers, its having done so was not in violation of public policy nor forbidden by law. The appellant executed the bond voluntarily and upon a valid consideration. No reason occurs to us or has been shown why appellant should be absolved of its obligation. Compare Illinois Surety Co. v. U. S., 251 F. 823, 163 C.C.A. 657 (C.C.A. 9th); State v. Cochrane, 264 Mo. 581, 175 S.W. 599; LaCrosse Lumber Co. v. Schwartz, 163 Mo.App. 659, 147 S.W. 501; Finley v. City of Tucson, 7 Ariz. 108, 60 P. 872; People, to Use of Houghten v. Newberry, 152 Mich. 292, 116 N.W. 419; State, to Use of Benton County v. Wood, 51 Ark. 205, 10 S.W. 624; Palmer v. Vance, 13 Cal. 553; American Surety Co. v. Butler, 86 Mont. 584, 284 P. 1011; Braithwaite v. Jordan, 5 N.D. 196, 65 N.W. 701, 31 L.R. A. 238.

■ The State of Montana sued for the use and benefit of the holders of the defaulted warehouse receipts. Having exe-

698

cuted the bond in favor of the state for the use and benefit of these parties, the appellant is in no position to claim that the state is not the proper party to enforce its obligation. The action was properly brought in the name of the state. Section 9067, Revised Codes of Montana; County of Wheatland v. Van, 64 Mont. 113, 207 P. 1003; 20 R.C.L. 665–667; 47 C.J. 26.

 Chatterton & Son being a foreign corporation, was beyond the jurisdiction of the Montana courts. It had no agent in the state upon whom process might be served. Its liability to the holders of its warehouse receipts was in no way dependent upon the fact of its having joined in the execution of the bond. It was not an indispensably necessary party to the action for the reformation and enforcement of that instrument. Section 50 of the Judicial Code (28 U.S.C.A. § 111) and Equity Rule 39, 28 U.S.C.A. following section 723, are applicable. Commercial Casualty Insurance Co. v. Lawhead, supra, and cases there cited.

Appellant claims error in the action of the trial court in striking certain affirmative defenses pleaded in its answer to the amended complaint. The action of the trial court in no way prejudiced the appellant nor impeded it in the making of its defense.

We have considered all errors assigned and have found no merit in any of them.

Affirmed.